# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Beech Grove, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID MATHEWS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 01A02-1203-CR-207 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ADAMS CIRCUIT COURT
The Honorable Frederick A. Schurger, Judge
Cause No. 01C01-1202-FD-1

**October 23, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

David Mathews appeals his convictions for public intoxication as a class B misdemeanor and intimidation as a class D felony and being an habitual offender. Mathews raises two issues which we revise and restate as:

I. Whether the trial court abused its discretion by denying Mathews's request for a mistrial; and

II. Whether the evidence is sufficient to sustain his conviction for public intoxication as a class B misdemeanor.

We affirm.

The relevant facts follow. On May 12, 2011, Mathews worked all day for a construction company, did not eat that day, purchased "a thirty pack of Natty Ice and a half pint of Admiral Nelson," and drank all of his purchases. Transcript at 189. At around 10:00 p.m., the Adams County Sheriff's Department dispatched Decatur Police Officers to a disturbance in the street on Piedmont Lane in Decatur, Adams County, Indiana, in reference to a fight or domestic issue involving Mathews. The Decatur Police Department informed Adams County Sheriff's Deputy Trevor Callahan, who was on his way to the address given by dispatch, that Mathews had left the area and that Callahan should proceed one street west of the area. Deputy Callahan went to Evergreen Lane, which was one street west of Piedmont Lane.

Deputy Callahan looked between "the residences on Evergreen Lane and towards the back where Flemings Apartments would be, a few houses North," and located Mathews. Id. at 129. Deputy Callahan turned on his spotlight, and Mathews turned around. Deputy Callahan yelled at Mathews, and Mathews stopped immediately and walked toward him. Deputy Callahan handcuffed Mathews, smelled the odor of an

2

alcoholic beverage when Mathews spoke, and observed that Mathews's speech was slurred. Based upon his experience as a jailer and a deputy, Deputy Callahan thought that Mathews was intoxicated.

Deputy Callahan performed an initial patdown and other officers arrived on the scene. Initially, Mathews was cooperative, but when Deputy Callahan moved Mathews's backpack from the hood of his squad car so that it would not scratch the car, Mathews became belligerent, irate, and "flew off the handle." Id. at 131. Mathews was being loud, cursing, "being very very vulgar," and said that Deputy Callahan was looking through his bag and trying to steal from him. Id. Deputy Callahan walked over to Decatur Police Officer Jonathan Wenzel's vehicle to place Mathews inside, and Mathews pulled away from him so much that at one point Deputy Callahan had to restrain him against the back of the vehicle so that officers could open the door. Deputy Callahan told Mathews to enter the vehicle, and Mathews began taunting him and told him to put him in the vehicle. Another officer calmed Mathews down enough so that the officers did not have to physically place Mathews in the car.

Officer Wenzel transported Mathews to the Adams County Jail. At some point during the drive, Mathews became combative, kicked the cage in the squad car, began cursing, and threatened to go to Officer Wenzel's house and take his wife and children. At the book-in counter, there was "some bets going on about the level of intoxication [Mathews] would have" to keep some sort of a sense of humor so that no one would become too upset, and Mathews "thought he [could] do better than what he did before." Id. at 171. At one point Mathews told Officer Wenzel that he wanted to kill him.

3

On May 16, 2011, the State charged Mathews with intimidation as a class D felony and public intoxication as a class B misdemeanor. The charging information alleged that Mathews was found at 211 Evergreen Lane in Adams County in a state of intoxication. In June 2011, the State filed a notice of intent to seek habitual substance offender status. The State filed an amended information in September 2011.

After a jury trial before Judge Patrick Miller, Mathews was found guilty of both counts as charged. Prior to the beginning of the habitual offender phase of the jury trial, Mathews informed Judge Miller that he had acted as his attorney for one of the underlying charges for the habitual offender status and requested a mistrial. After recessing for the evening and hearing arguments the following morning, Judge Miller denied Mathews's motion for mistrial. Specifically, Judge Miller stated: "My representation of you on an underlying offense that has never been presented to the jury as of yet has no impact on the first phase of this trial so I will deny the request for mistrial." Id. at 262. Judge Miller recused himself and reassigned the case to Judge Frederick Schurger. The jury found Mathews to be an habitual offender. The court sentenced Mathews to two and one-half years for intimidation as a class D felony enhanced by four years for Mathews's status as an habitual offender, and to 180 days for his conviction for public intoxication and ordered that it be served concurrent with his sentence for intimidation for an aggregate sentence of six and one-half years.

I.

The first issue is whether the trial court abused its discretion by denying Mathews's request for a mistrial. Generally, the decision to grant or deny a motion for

mistrial lies within the discretion of the trial court.  Francis v. State, 758 N.E.2d 528, 532 (Ind. 2001).  "The grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error."  Id.  "On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury."  McManus v. State, 814 N.E.2d 253, 260 (Ind. 2004), reh'g denied, cert. denied, 546 U.S. 831, 126 S. Ct. 53 (2005). "[T]o succeed on appeal from the denial of a mistrial, a defendant must demonstrate that the conduct complained of was both error and had a probable persuasive effect on the jury's decision."  Booher v. State, 773 N.E.2d 814, 820 (Ind. 2002).

Mathews argues that Judge Miller should have granted a mistrial because he was required to recuse under Rule 2.11(A)(6) of the Indiana Code of Judicial Conduct and the habitual offender enhancement is part and parcel of the underlying conviction.  The State argues that an underlying conviction phase of a trial and the habitual offender phase are separate and distinct, there is no per se violation when a judge does not make a disclosure of former representation, and Mathews has failed to make a showing of prejudice.

Rule 2.11(A) of the Indiana Code of Judicial Conduct provides:

A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality[] might reasonably be questioned, including but not limited to the following circumstances:

* * * * *

(6)    The judge:

(a)    served as a lawyer in the matter in controversy,
or    was    associated    with    a    lawyer    who

5

participated substantially as a lawyer in the matter during such association;

Under the circumstances, we cannot say that the portion of the trial addressing Mathews's charges for public intoxication and intimidation are the same "matter in controversy" for purposes of disqualification or that reversal is required. See Denton v. State, 496 N.E.2d 576, 581 (Ind. 1986) ("While in the usual habitual offender determination the same jury hears both the felony charge and the recidivist charge in a bifurcated proceeding, we have previously held that it is permissible for a different jury than the one who heard the case on the underlying felony charge to determine a defendant's habitual offender status."), reh'g denied; Gunter v. State, 605 N.E.2d 1209, 1210-1211 (Ind. Ct. App. 1993) (holding that while it was error for the regular judge to disqualify himself for only the habitual phase of the trial, the error was harmless), trans. denied. Given that Judge Miller did not serve as a lawyer in the matter in controversy, i.e., the matter involving the public intoxication or intimidation charges, we cannot say that Rule 2.11(A)(6) required recusal prior to the habitual offender phase of the trial or that the trial court abused its discretion by denying Mathews's request for a mistrial.[1]

## II.

The next issue is whether the evidence is sufficient to sustain Mathews's conviction for public intoxication. When reviewing claims of insufficiency of the

---

[1] Mathews cites Calvert v. State, 498 N.E.2d 105 (Ind. Ct. App. 1986). In Calvert, the trial judge appeared on two occasions for the prosecution when the case involving forgery was originally filed and had, as the prosecutor, obtained a court order for a sample of the defendant's handwriting which was admitted into evidence. 498 N.E.2d at 106. On appeal, the court held that a trial judge must disqualify himself from a proceeding in which he has actively served as an attorney for one of the parties regardless of whether actual bias or prejudice exists. Id. at 107. Unlike Calvert, Judge Miller did not serve as an attorney in the case involving the pending charges of public intoxication or intimidation. Thus, we do not find Calvert instructive.

evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

Mathews argues only that the evidence is insufficient to support his conviction for public intoxication. The offense of public intoxication is governed by Ind. Code § 7.1-5-1-3, which provides that "[i]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9)."[2] Thus, to convict Mathews of public intoxication as a class B misdemeanor, the State needed to prove that Mathews was in a public place or a place of public resort in a state of intoxication.

We initially address Mathews's argument that "there was no evidence that [he] was in a state of intoxication" and that "the State offered no evidence regarding when the incident giving rise to the dispatch occurred, when Mathews was drinking in relation to that time, when Mathews left the Piedmont Lane area, or how long he had been near Evergreen Lane when he was found." Appellant's Brief at 3, 9. The State argues that the intoxication element was sufficiently proven on Mathews's admission that he was highly intoxicated.

---

[2] Subsequently amended by Pub. L. No. 93-2012, § 2 (eff. July 1, 2012); and Pub. L. No. 117-2012, § 1 (eff. July 1, 2012).

On May 12, 2011, Mathews worked all day and then drank "a thirty pack of Natty Ice and a half pint of Admiral Nelson." Transcript at 189. The police were dispatched to a disturbance involving Mathews around 10:00 p.m. Deputy Callahan testified that he responded to the call around 10:00 p.m., but never made it to the address on Piedmont Lane because he was directed to proceed one street west as Mathews had left the area. Deputy Callahan proceeded one street west to Evergreen Lane and observed Mathews. The envelope containing the video of what occurred at the jail lists the date as May 12, 2011, and the time as 22:20. Based upon a number of factors, including the odor of an alcoholic beverage coming from Mathews, his demeanor, his slurred speech, and his bloodshot, watery, and glassy eyes, multiple officers testified that based upon their experience Mathews was intoxicated. Also, Mathews testified that he was "highly intoxicated" and "wasn't in [his] right state of mind" when he threatened Officer Wenzel. Id. at 190, 200, 202. During closing argument, Mathews's counsel stated: "First of all [Mathews] admits he was drunk. Inebriated, plastered, on a bender, he admits it. He said he drank thirty beers. All right." Id. at 226. We cannot say that the evidence is insufficient on this basis.

We next turn to Mathews's argument that the evidence was insufficient because he was not in a public place or place of public resort. Mathews argues that while the State relied on evidence that the only way to reach Evergreen Lane from Piedmont Lane would be to cross Bellmont Road, the charging information did not charge Mathews with being intoxicated on Bellmont Road. The State argues that the sequence of events and the layout of the streets in Decatur lead to the natural inference that Mathews was drunk

8

when he was fighting in the street on Piedmont Lane and that, when the call went out that someone had called the police, he then crossed Bellmont Road in an intoxicated state and was ultimately found in a person's yard on Evergreen Lane. Thus, the State argues that "on at least two occasions, the jury could reasonably have concluded that [Mathews] was intoxicated in a public place – once on Piedmont and once as he crossed Bellmont." Appellee's Brief at 9. The State also argues that "[i]n charging Defendant with public intoxication alleging a specific date, time and location, a defendant should be placed on notice that the sequence of events that led to his arrest at that location at that time is the allegation for which he must prepare a defense." Id. at 11.

The Indiana Supreme Court "stated many years ago, 'The purpose of the law is to protect the public from the annoyances and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition.'" State v. Jenkins, 898 N.E.2d 484, 487 (Ind. Ct. App. 2008) (quoting State v. Sevier, 117 Ind. 338, 20 N.E. 245, 246-247 (1889)), trans. denied. "A 'public place' does not mean only a place devoted to the use of the public." Jones v. State, 881 N.E.2d 1095, 1097 (Ind. Ct. App. 2008) (citing Wright v. State, 772 N.E.2d 449, 456 (Ind. Ct. App. 2002)). "It also means a place that 'is in point of fact public, as distinguished from private, – a place that is visited by many persons, and usually accessible to the neighboring public.'" Id. "A private residence, including the grounds surrounding it, is not a public place." Moore v. State, 634 N.E.2d 825, 827 (Ind. Ct. App. 1994).

The facts most favorable to the conviction reveal that the police were dispatched to a fight involving Mathews occurring in the street on Piedmont Lane. Deputy Callahan

9

discovered Mathews "between the residences on Evergreen Lane and towards the back where Flemings Apartments would be, a few houses North." Transcript at 129. In order to reach on foot the location where Mathews was observed by Deputy Callahan, Mathews would have had to cross Bellmont Road, which is a public street. To the extent that the charging information listed Evergreen Lane, the State does not point to evidence and our review of the record does not reveal whether Mathews was ever on or crossed Evergreen Lane or whether the exact location where Mathews was observed by Deputy Callahan was a public place. Thus, the evidence and reasonable inferences therefrom indicate only that Mathews was intoxicated in the public places of Piedmont Lane and Bellmont Road. Accordingly, we must address Mathews's argument that the evidence at trial materially varied from the charging information.

Mathews essentially argues that there is a material variance between the charging information and the evidence produced at trial which resulted in insufficient evidence to convict him as charged. See Rupert v. State, 717 N.E.2d 1209, 1211-1212 (Ind. Ct. App. 1999) (addressing the defendant's argument of whether a variance between the information and the evidence was fatal in the context of the issue of whether the evidence was insufficient to support the defendant's conviction).

An information must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Ind. Code § 35-34-1-2(d), and "must be sufficiently specific to apprise the defendant of the crime for which he is charged and to enable him to prepare a defense." Bonner v. State, 789 N.E.2d 491, 493 (Ind. Ct. App. 2003) (quoting Jones v. State, 467 N.E.2d 1236, 1241 (Ind. Ct. App. 1984)). "A criminal

10

defendant has the right to be advised of the nature and cause of the accusation against him. There must be consistency between the allegations charged and the proof adduced . . . ." Simmons v. State, 585 N.E.2d 1341, 1344 (Ind. Ct. App. 1992) (citation omitted). A variance is an essential difference between proof and pleading. Allen v. State, 720 N.E.2d 707, 713 (Ind. 1999). Not all variances are material or fatal, however. Id. The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:

> (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

> (2) will the defendant be protected in the future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

Mitchem v. State, 685 N.E.2d 671, 677 (Ind. 1997) (quoting Harrison v. State, 507 N.E.2d 565, 566 (Ind. 1987)).[3] In other words, to award relief on the basis of a variance between allegations in the charge and the evidence at trial, the variance must be such as to either have misled the defendant in the preparation and maintenance of his defense with resulting harm or prejudice or leave the defendant vulnerable to double jeopardy in a

---

[3] The Court in Mitchem noted:

> Applying this test is essential because it addresses two constitutional guaranties of the accused in criminal prosecutions. Part one of the test meets the requirements under Art. 1, § 13 of the Indiana Constitution which entitles defendant "to demand the nature and cause of the accusation against him, and to have a copy thereof." The second part of the test for variance meets the requirements of Art. 1, § 14 of the Indiana Constitution which provides that "no person shall be put in jeopardy twice for the same offense." See Madison[ v. State, 234 Ind. 517, 545-546, 130 N.E.2d 35, 48 (1955),] (concurring opinion of Arterburn, J., in which three other justices concurred).

685 N.E.2d at 677 n.8.

11

future criminal proceeding covering the same event, facts, and evidence. Winn v. State, 748 N.E.2d 352, 356 (Ind. 2001).

Mathews cites Moore v. State, 634 N.E.2d 825 (Ind. Ct. App. 1994). In that case, James Moore parked his car in the driveway of the residence of his former wife and her husband. 634 N.E.2d at 825-826. An altercation occurred between Moore and his former wife's husband. Id. at 826. Moore appealed his conviction for public intoxication and argued that he was not in a public place at the time of his arrest. Id. The State argued that Moore was not in a public place when arrested, but contended that the conviction was supported because Moore must have driven on public roads to reach his former wife's residence. Id.

> The court held:
>
> The charging information states that Moore was in a state of intoxication at 10421 Hills Dale Drive ([the former wife's] residence), not on the public roads going to the residence. Further, it is uncontroverted that Moore was only observed in [the former wife's] driveway or backyard. We reject the State's suggestion that we broaden the charging information and infer evidence which was not actually presented at trial. Moore's public intoxication conviction is reversed.

Id. at 827. Although we noted that the charging information in Moore listed only the address for a private residence, our holding was also based on the fact that the arresting officer had not seen the defendant in a public place. Here, while the record does not reveal whether the officers saw Mathews in a public place, the officers were called to a fight involving Mathews occurring in the street on Piedmont Lane and subsequently located Mathews near Evergreen Lane, and Mathews must have crossed Bellmont Road to reach that location. Thus, Moore is distinguishable.

12

In any event, Moore should not be read to hold that an intoxicated person first seen on public property, eventually found on private property, and charged with intoxication at that address is exempt from prosecution for public intoxication. Although not directly on point, our decision in Vickers v. State, 653 N.E.2d 110 (Ind. Ct. App. 1995), is instructive. In that case, an off-duty officer stopped Vickers after observing his vehicle weaving across lanes. 653 N.E.2d at 112. Vickers fled from the traffic stop, and a high-speed chase ensued. Id. Eventually the chase led to a "densely populated residential area." Id. Vickers pulled into Rockford Court, and an officer parked his car to block the exit from that road. Id. Upon attempting to leave Rockford Court, Vickers struck the officer's vehicle and was arrested. Id.

On appeal, Vickers challenged his convictions and sentences for three alcohol related charges: driving while intoxicated, operating a vehicle with a BAC of .10% or more, and public intoxication. Id. at 114. Specifically, he argued that the evidence did not support a conviction for all three offenses. Id. We disagreed, holding in relevant part that "Vickers was charged with public intoxication based on his intoxicated condition after he ran into [the officer's] vehicle. Vickers has failed to convince us that the conduct underlying his convictions for driving while intoxicated and public intoxication was so continuous and uninterrupted as to constitute a single transaction." Id. at 115 (footnote omitted). In a footnote, we noted that Vickers had been charged with public intoxication as follows: "Ray W. Vickers, on or about October 23, 1993, was found at 10335 Rockford Ct., a public place in Marion County, Indiana, in a state of intoxication. . . ." Id. at 115 n.1. Thus, we held that the evidence was sufficient, even though the charging

13

information had listed only a street address, because the officer testified that he had observed Vickers in the public roadway. Id. at 115.

Similarly, here, the circumstantial evidence indicates that Mathews was on Piedmont Lane and crossed Bellmont Road. Such evidence is sufficient to show that Mathews was intoxicated in a public place. Mathews does not specifically contend that the allegations misled him in his defense. Indeed, the probable cause affidavit mentions that Officer Wenzel was dispatched to Piedmont Lane, that Mathews left an address on Piedmont Lane, and was later discovered near Evergreen Lane. Mathews also does not contend that he would be subject to future criminal proceedings covering the same event, facts, and evidence. Under the circumstances, we cannot say that the variance was material. See Parahams v. State, 908 N.E.2d 689, 693 (Ind. Ct. App. 2009) (addressing a situation in which the charging information alleged one act of resisting law enforcement against one officer while the evidence at trial revealed that it was another officer that the defendant resisted, and concluding that the variance was not fatal to the State's case). We conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have found that Mathews was guilty of public intoxication as a class B misdemeanor.

For the foregoing reasons, we affirm Mathews's convictions for intimidation as a class D felony and public intoxication as a class B misdemeanor and his status as an habitual offender.

Affirmed.

FRIEDLANDER, J., concurs.

14

PYLE, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID MATHEWS,                          )
                                        )
    Appellant-Defendant,           )
                                        )
        vs.                    )    No. 01A02-1203-CR-207
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.            )

**PYLE, Judge, concurring with opinion.**

I concur with my colleagues. However, I also think it is important to note that Mathews's argument regarding the trial court's denial of his motion for mistrial fails because he did not demonstrate how he was deprived of a fair trial. His argument is solely based on Rule 2.11 of the Indiana Code of Judicial Conduct. This rule places an affirmative duty upon a judge to disqualify when his or her impartiality might reasonably be questioned. *See Voss v. State*, 856 N.E.2d 1211 (Ind. 2006). The language and examples provided with the rule presuppose that a judge has *knowledge* of an event that calls into question his or her ability to be fair and impartial. In this case, the record reveals that neither the judge, prosecutor, defense counsel, nor Mathews himself was aware of the judge's prior representation of Mathews until after the completion of the

16

first phase of the trial. At that point, the judge correctly disqualified himself from the case. Therefore, because there was no knowledge during the trial, there was no duty to disqualify.[i]

---

[i] If Mathews (1) had been aware that the presiding judge had previously represented him in an unrelated criminal matter, and (2) failed to disclose that fact until after the first phase of the trial was completed, then he would have consented to the perceived error. *Hape v. State*, 903 N.E.2d 977 (Ind. Ct. App. 2009); *Stein v. State*, 166 Ind. App. 133, 334 N.E.2d 698 (1975) *trans. denied*.