**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KELLY N. BRYAN**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 31 2014, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTHEW DANTE BENNETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1306-CR-515 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-1112-FB-22

**January 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Matthew Dante Bennett appeals his convictions for class B felony aggravated battery, class B felony armed robbery, and class D felony auto theft. Bennett raises four issues for our review which we restate as: (1) whether his right to a speedy trial was violated; (2) whether the evidence was sufficient to support his conviction for aggravated battery; (3) whether his convictions for aggravated battery and armed robbery violate double jeopardy; and (4) whether the trial court abused its discretion when it refused his tendered jury instruction regarding his alibi defense. Finding no abuse of discretion or reversible error, we affirm.

**Facts and Procedural History**

On August 4, 2011, Doroteo Chavez and Abel Trejo stopped at a gas station in Muncie where they encountered a woman named Spring Miller. They arranged to meet Spring later that night so that Spring could dance for them. Spring subsequently met up with her husband Robert Miller and Bennett. Robert and Bennett informed Spring that they planned to accompany Spring to her meeting with Chavez and Trejo so that they could rob them. Spring did not wish to participate in the robbery, but because Bennett was armed with a handgun and threatened to hurt her children, she agreed to assist the two men.

Spring texted Chavez and Trejo and asked them to come pick her up at an apartment. When they arrived, Spring went outside to meet them while Robert and Bennett went to the alley behind the apartment building. Spring got in a vehicle with Chavez and Trejo and directed them to drive a very short distance to an address on Celia Avenue where there was a

2

house set back from the road. After arriving at the house, Spring led the men out of the vehicle and to the porch of the house. It was so dark outside that Spring used the light on her cell phone to help see where they were going. As they were walking up the steps onto the porch, Spring heard sticks breaking "like somebody walking . . . coming real fast." Tr. at 350. Spring then heard a "big woosh" and a "big crunch" as Robert struck Trejo in the head with a baseball bat. *Id.* at 350-51. Trejo immediately fell to the ground twitching and gasping for air. Spring then saw Bennett wrestling with Chavez on the ground. Spring heard Bennett order Chavez to stay on the ground. Robert and Bennett began searching Trejo's and Chavez's pockets. Trejo testified at trial that the two men took his wallet containing more than $400, along with identification cards and driver's licenses.

Spring ran from the scene. A few minutes later, as she was walking on Jackson Street, Robert pulled up next to her driving the vehicle that Chavez and Trejo had been driving earlier. Bennett was in the passenger seat. The men ordered Spring to get into the vehicle. Spring complied because Bennett was still armed with the handgun. Meanwhile, Chavez and Trejo managed to get to a nearby fast food restaurant and contacted police to report the robbery. Officer Ron Miller of the Muncie Police Department responded to the scene. When he arrived, he observed that both Chavez and Trejo appeared to have suffered head injuries and their faces were bloody. Trejo was lapsing in and out of consciousness and, due to his injuries, was unable to communicate with Officer Miller. Officer Miller summoned an ambulance, and the two victims were taken to Ball Memorial Hospital.

The State charged Bennett with five counts: count I, class B felony aggravated battery; count II, class C felony battery by means of a deadly weapon; count III, class B felony armed robbery; count IV, class B felony armed robbery; and count V, class D felony auto theft. An initial hearing was conducted on May 30, 2012, during which Bennett requested a speedy trial. Bennett was thereafter held in the Delaware County Jail on $75,000 bond. On July 11, 2012, the State filed a motion to release Bennett, which the trial court granted. Bennett was released and placed on pretrial supervision, and new trial dates were set for September 17 and 18, 2012. Bennett objected to the new trial dates as a violation of his right to a speedy trial, and a hearing was held regarding his objection on July 25, 2012. During the hearing, Bennett's counsel properly alerted the trial court to our supreme court's recent decision in *Cundiff v. State,* 967 N.E.2d 1026 (Ind. 2012), and to the fact that although Bennett was incarcerated, he was no longer incarcerated in the current cause but was being held on a probation violation in a different cause. Finding no speedy trial violation, the trial court left the trial dates as scheduled.

After multiple continuances filed by both Bennett and the State, a three-day jury trial began on April 8, 2013. The jury found Bennett guilty of class B felony aggravated battery, class B felony armed robbery, and class D felony auto theft. The trial court sentenced Bennett to a total of thirty years' imprisonment. This appeal followed. Additional facts will be supplied as necessary.

## Discussion and Decision

### *I. Speedy Trial*

Bennett first contends that his right to a speedy trial was violated because he was not brought to trial within seventy days of making his request pursuant to Indiana Criminal Rule 4(B). The Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution guarantee the right to a speedy trial. *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009), *trans. denied*. Implementing these protections, Indiana Criminal Rule 4(B) provides in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or there was not sufficient time to try him during the seventy (70) calendar days because of the congestion of the court calendar.

Ind. Criminal Rule 4(B)(1).

The purpose of Criminal Rule 4(B) is to prevent a defendant from being detained in jail for more than seventy days after requesting an early trial. *Parker v. State*, 965 N.E.2d 50, 52 (Ind. Ct. App. 2012), *trans. denied*. Although Criminal Rule 4 places an "affirmative duty" on the State to bring a defendant to trial, the purpose of the rule is to assure speedy trials, not to provide defendants with a technical means to avoid trial. *Cundiff v. State,* 967 N.E.2d 1026, 1028 (Ind. 2012). In *Cundiff,* the defendant posted bond and was released from incarceration in one cause but was subsequently incarcerated in a separate probation-revocation cause. *Id.* at 1027. While incarcerated in the probation-revocation cause, he filed a speedy trial motion and a motion for discharge pursuant to Criminal Rule 4(B) in the other

cause. *Id*. Our supreme court affirmed the trial court's denial of the defendant's motion for discharge. Specifically, the court concluded that, in order for Criminal Rule 4(B) to apply, the defendant must be incarcerated on the charge for which he seeks a speedy trial. *Id*. at 1031. The court held that Criminal Rule 4(B) is not available to defendants who are incarcerated, but not on the charge for which they requested a speedy trial. *Id*.

Here, prior to expiration of the seventy-day speedy trial period, Bennett was released from incarceration on the current charges and placed on pretrial probation. Shortly after his release, Bennett was then incarcerated in a different cause. At the time he objected to the continuance of his trial date pursuant to Criminal Rule 4(B), although he was again incarcerated, Bennett was not incarcerated on the current charges for which he had sought a speedy trial. Thus, as in *Cundiff,* Criminal Rule 4(B) was not available to him.[1] Bennett has not shown that his right to a speedy trial was violated.

## II. Sufficiency of the Evidence

We next address Bennett's challenge to the sufficiency of the evidence to support his conviction for class B felony aggravated battery. When reviewing insufficiency of the evidence claims, we neither reweigh evidence nor judge witness credibility. *Mathews v. State*, 978 N.E.2d 438, 443 (Ind. Ct. App. 2012), *trans. denied* (2013). Instead, we examine the evidence and reasonable inferences most favorable to the verdict. *Id*. If there is evidence of probative value from which a reasonable trier of fact could find the defendant guilty

---

[1] Bennett urges that due to the supervision, restrictions, and obligations involved with pretrial probation, his release to probation should be considered the same as incarceration pursuant to Criminal Rule 4(B). Bennett directs us to no authority, and we are unaware of any, that supports this novel proposition.

6

beyond a reasonable doubt, we will affirm. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 213 (Ind. Ct. App. 2007), *trans. denied*.

To prove the offense of class B felony aggravated battery as charged, the State was required to prove that Bennett knowingly or intentionally inflicted injury on Trejo that created a substantial risk of death. *See* Ind. Code § 35-42-2-1.5. Bennett's sole argument in this regard is that the State failed to prove that the injuries inflicted to Trejo created a substantial risk of death. When reviewing a sufficiency claim concerning whether injuries created a substantial risk of death, "we look to the observable facts, including the nature and location of the injury, and the treatment provided." *Oeth v. State*, 775 N.E.2d 696, 702 (Ind. Ct. App. 2002), *trans. denied* (2003).

The record indicates that after Trejo was struck in the head with a baseball bat, he immediately fell to the ground twitching and gasping for air. After arriving at the hospital, Trejo was intubated and placed on a ventilator because he could not breathe on his own. He was in and out of consciousness, lethargic, and not able to communicate. He had suffered two fractures to his skull and had bleeding on the brain and brain swelling. Spinal fluid was leaking out of his ear, and he was suffering seizures. Doctors also determined that his lungs were retaining fluid. Trejo spent at least three or four days in the intensive care unit before it was determined that he was stable enough to breathe on his own. He was then transferred to the surgical unit where he spent an additional five days. In light of this evidence, the jury could have reasonably inferred that Trejo's injuries created a substantial risk of death.

Bennett maintains that "[n]either of the State's medical experts, Dr. Chan or Dr. McKnight, testified that [Trejo's] injuries created a substantial risk of death," and he implies that it is possible that Trejo's injuries would have resolved on their own if left untreated. *See* Appellant's Br. at 10. This Court has held that expert medical testimony is not required to prove substantial risk of death. *Fleming v. State*, 833 N.E.2d 84, 88 (Ind. Ct. App. 2005) (citing *Wilcher v. State*, 771 N.E.2d 113, 117 (Ind. Ct. App. 2002), *trans. denied*). Moreover, Bennett's argument is merely an invitation for us to reweigh the evidence in his favor, which is not within our prerogative on appeal. The State presented sufficient evidence to support Bennett's conviction for class B felony aggravated battery.

### III. Double Jeopardy

Bennett claims that his convictions for class B felony aggravated battery and class B felony armed robbery violate Indiana's prohibition against double jeopardy. Article 1, Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Our supreme court has held that two or more offenses are the "same offense" in violation of Indiana's double jeopardy clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). We review de novo whether a defendant's convictions violate this provision. *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000).

Bennett relies on the actual evidence test. Pursuant to the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Lee v. State*, 892 N.E.2d 1231 (Ind. 2008). A defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.* Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the factfinder's perspective. *Id.* To determine what facts were used to convict, we consider the evidence, charging informations, final jury instruction, and arguments of counsel. *Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002). There is no double jeopardy violation when the evidentiary facts establishing the essential elements of one offense establish only one or even several, but not all, of the elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002).

Bennett argues that the State relied on his accomplice's single act of hitting Trejo with a baseball bat to establish the essential elements of both the aggravated battery and armed robbery. The relevant charging informations read as follows:

Count I, aggravated battery:

The undersigned says that on or about August 4, 2011, in Delaware County, State of Indiana, Matthew Dante Bennett did knowingly inflict injury on Able Trejo that created a substantial risk of death, contrary to the form of the statutes….

9

Count III, armed robbery:

The undersigned says that on or about August 4, 2011, in Delaware County, State of Indiana, Matthew Dante Bennett did knowingly take property, to-wit: wallet, from another person or the presence of another person, to-wit: Able Trejo, by using force; said act being committed while the defendant was armed with a deadly weapon, contrary to the form of the statutes….

Appellant's App. at 20, 22.

The State presented evidence that Robert was armed with a baseball bat and Bennett was armed with a handgun during the robbery. The testimony indicates that after Robert hit Trejo with the baseball bat inflicting injury that created a substantial risk of death, Bennett used force to wrestle Chavez to the ground. Bennett then ordered Chavez to stay on the ground while Robert and Bennett searched Trejo's and Chavez's pockets and took Trejo's wallet.

Contrary to Bennett's argument, Robert's single act of hitting Trejo in the head with the baseball bat was not the only "conduct" used to establish the essential elements of both the aggravated battery and the armed robbery. Appellant's Br. at 8. Our supreme court has stated that, as long as each conviction requires proof of at least one unique evidentiary fact, no violation of the actual evidence principle occurs. *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002). To prove that Bennett committed aggravated battery, the State was required to present evidence that, as an accomplice, Bennett inflicted injury on Trejo that created a substantial risk of death. To show that Bennett committed armed robbery, the State was required to present additional evidence that Bennett took property from Trejo by using force, and that such act was committed while Bennett was armed with a deadly weapon.

10

Accordingly, although Robert's act of hitting Trejo in the head with a baseball bat and the resulting injury were used to establish the essential elements of aggravated battery, additional evidentiary facts were required and used to establish the essential elements of armed robbery. We find no double jeopardy violation.

### IV. Jury Instruction

Finally, Bennett contends that the trial court abused its discretion when it refused his proposed jury instruction regarding his alibi defense. Instructing the jury lies within the sole discretion of the trial court, and we will reverse only upon an abuse of discretion. *Schmid v. State*, 804 N.E.2d 174, 182 (Ind. Ct. App. 2004), *trans. denied*. To determine whether the trial court abused its discretion in refusing to give a tendered jury instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the instruction; and (3) whether the substance of the instruction is covered by other instructions. *Weida v. State*, 778 N.E.2d 843, 847 (Ind. Ct. App. 2002). To obtain reversal of a conviction based on an instructional error, the defendant must demonstrate a reasonable probability that the substantial rights of the complaining party have been adversely affected. *Shelby v. State*, 986 N.E.2d 345, 360 (Ind. Ct. App. 2013), *trans. denied*.

Bennett tendered the following instruction regarding his alibi defense:

> The Defendant has asserted the defense of alibi. Evidence has been presented that at the time of the commission of the crime charged in the information the defendant was at a different place so remote or distant that he could not have committed the crime. The State had the burden of disproving this defense beyond a reasonable doubt.

11

Appellant's App. at 137. The trial court refused that instruction and instead instructed the jury as follows:

> The Defendant has asserted the defense of alibi. Evidence has been presented that at the time of the commission of the crime charged in the information, that the Defendant was at a different place so remote or distant that he could not have committed that crime. You should consider this assertion as you would any other evidence in the case.

Tr. at 486-87. Bennett asserts that his proposed instruction is the more correct statement of law and that the alibi instruction given to the jury "failed to instruct the jury on the issues of burden of proof of [his] alibi." Appellant's Br. at 11-12. We disagree.

An alibi is an affirmative defense which, once invoked, the State has the burden of proving that the defendant was in fact at the scene of the crime and committed the offense. *Harris v. State*, 617 N.E.2d 912, 915 (Ind 1993), *overruled on other grounds by Wright v. State*, 690 N.E.2d 1098, 1099 (Ind. 1997). Contrary to the implication of the language of Bennett's proposed instruction, the State did not bear the burden to directly rebut Bennett's alibi but was permitted to rely on its presentation of evidence in its case-in-chief. *See Clark v. State*, 431 N.E.2d 112, 115 (Ind. 1982). Here, the State presented eyewitness testimony placing Bennett at the scene of the crimes and demonstrating that he had in fact participated in the commission of those crimes. The State was required to do no more. *Sangsland v. State*, 715 N.E.2d 875, 880 (Ind. Ct. App. 1999), *trans. denied*. The record further indicates that, in addition to the alibi instruction, the jury was given extensive instruction regarding the presumption of innocence and the State's burden to prove each essential element of the crimes charged beyond a reasonable doubt. Tr. at 484-86. Under the circumstances, the jury

was adequately instructed regarding the State's burden of proof, and Bennett has failed to establish that the trial court abused its discretion when it refused his proposed jury instruction.

Affirmed.

BAKER, J., and NAJAM, J., concur.