**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 31 2014, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

CAMERON MAYFIELD,  )
)
    Appellant-Defendant,  )
)
        vs.  )     No. 49A02-1306-CR-500
)
STATE OF INDIANA,  )
)
    Appellee-Plaintiff.  )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Master Commissioner
Cause No. 49G03-1302-FC-10571

**January 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Cameron Mayfield appeals his conviction for class C felony battery on a pregnant woman following a bench trial. The sole issue presented for our review is whether the State presented sufficient evidence to support the conviction. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

The facts most favorable to the conviction indicate that, on February 13, 2013, Mayfield and Jenkins, the mother of his son, were at the home of Mayfield's disabled mother, Dathena. Dathena's caregiver, Sarah Williams,[1] was also at the home. Williams observed Mayfield and Jenkins "arguing and fussing over a piece of paper that [Jenkins] had. And at the time, he was pulling on her and pushing on her." Tr. at 20. Williams said to Mayfield, "Cameron, you shouldn't put your hands on a woman, [e]specially if she's pregnant. She's got your baby, you know." *Id*. Mayfield refused to take his hands off Jenkins and threatened to "put his hands" on Williams instead. *Id*. at 23-24. Mayfield then knocked Jenkins down onto a futon and started hitting her in the face with his fist. Mayfield also spit in Jenkins's face approximately three times. When Mayfield's brother tried to intervene, Mayfield pulled out a knife. Williams said to Mayfield, "Cameron, you don't want to do that, she's pregnant with your baby." *Id*. at 25. Mayfield replied, "That's not my baby." *Id*. He began to poke Jenkins in her legs and arms with the knife. Williams tried to help, yelling at Mayfield to

---

[1] We note that the court reporter transcribed this witness's name as Sarah "Willims" while other court documents refer to her as Sarah "Williams." We presume that the transcript spelling is erroneous and will refer to her as Sarah Williams.

stop and saying, "You're going to hurt her. That's your baby." *Id*. Mayfield then "jumped all the way on top of" Jenkins and appeared to be stabbing her. *Id*.

Officer Teresa Welborn was dispatched to the scene on a report of a disturbance involving a pregnant woman and her boyfriend who was armed with a knife. *Id*. at 39. Officer Welborn was very familiar with the residence because she had made "numerous runs" to that location. *Id*. at 37. When Officer Welborn entered the residence, Dathena told her that her son was upstairs beating his pregnant girlfriend. As Officer Welborn was speaking to Dathena, Williams ran to the top of the stairs screaming that Mayfield was stabbing Jenkins. Officer Welborn rushed upstairs and saw Mayfield straddling Jenkins on the futon. Jenkins was lying on her side and screaming and crying as Mayfield punched her in the belly. Officer Welborn observed that it was "obvious" that Jenkins was pregnant. *Id.* at 42. Mayfield was punching Jenkins in the belly with his left hand and "his right hand went in a downward motion like he was going to stab her." *Id*. at 45. Officer Welborn deployed her taser and handcuffed Mayfield. Detective Anna Humkey, a domestic violence detective with the Indianapolis Metropolitan Police Department arrived at the scene and observed that Jenkins "was visibly pregnant." *Id*. at 65. Detective Humkey also observed that Jenkins had a scratch on her chin and a cut on her leg. Williams noticed that Jenkins's face was red and swollen and had some red marks on it that looked like scratches.

3

The State charged Mayfield with class C felony battery. Following a bench trial on April 19, 2013, the trial court found Mayfield guilty as charged. This appeal followed.

**Discussion and Decision**

When reviewing insufficiency of the evidence claims, we neither reweigh evidence nor judge witness credibility. *Mathews v. State*, 978 N.E.2d 438, 443 (Ind. Ct. App. 2012), *trans. denied* (2013). Instead, we examine the evidence and reasonable inferences most favorable to the verdict. *Id.* If there is evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt, we will affirm. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 213 (Ind. Ct. App. 2007), *trans. denied*.

To convict Mayfield of class C felony battery as charged here, the State was required to prove that Mayfield: (1) knowingly or intentionally (2) touched Jenkins in a rude, insolent, or angry manner (3) resulting in bodily injury to Jenkins (4) while Jenkins was pregnant, and (5) Mayfield knew she was pregnant. *See* Ind. Code § 35-42-2-1(a)(8). "Bodily injury" means any impairment of physical condition, including physical pain. Ind. Code § 35-31.5-2-29.

Mayfield does not contest that he battered Jenkins. He only challenges the sufficiency of the evidence that Jenkins was pregnant at the time of the battery, that he knew that she was pregnant, and that she suffered bodily injury. We will address each contention in turn.

Regarding Jenkins's pregnancy, the State presented overwhelming evidence that Jenkins was pregnant at the time of the battery. Three eyewitnesses testified that she was clearly and visibly pregnant at the time of the attack. The trial court admitted into evidence a photograph of Jenkins taken shortly after the incident depicting a visibly pregnant woman. Tr. at 14. Indeed, at the bench trial held a mere two months after the battery occurred, Jenkins herself testified that she was currently pregnant with Mayfield's baby. Despite this overwhelming evidence, Mayfield asserts that the eyewitness testimony merely reflects the witnesses' opinions and beliefs that Jenkins was pregnant, and he also makes much of the fact that, although Jenkins testified that she was pregnant during the trial, she did not specifically indicate whether she was pregnant at the time of the incident. In light of all of the evidence presented, especially the photograph of Jenkins taken shortly after the incident, we find Mayfield's arguments disingenuous. The State presented sufficient probative evidence from which a reasonable trier of fact could conclude that Jenkins was pregnant at the time of the battery.

Mayfield maintains that, even assuming that the State proved that Jenkins was pregnant at the time of the battery, the State failed to prove that he knew that she was pregnant. In addition to the ample evidence presented by the State that Jenkins was clearly and visibly pregnant at the time of the attack, the record indicates that when Williams pleaded with Mayfield to stop beating his pregnant girlfriend, Mayfield replied, "That's not my baby." Tr. at 25. The trier of fact could reasonably infer from this denial of paternity that Mayfield was affirmatively acknowledging the pregnancy. Although Mayfield asserts that

5

his statement may have just been a comment on Jenkins's physique as opposed to an acknowledgment of the pregnancy, Mayfield's entire argument in this regard is an improper invitation for us to reweigh the evidence in his favor, which we will not do. The State presented sufficient evidence that Mayfield knew that Jenkins was pregnant at the time of the battery.

Finally, Mayfield contends that the State failed to prove that Jenkins suffered bodily injury. Regarding bodily injury, our supreme court has held that no particular level of pain is required in order to rise to the level of impairment of physical condition and that "physical pain *is* an impairment of physical condition." *Bailey v. State*, 979 N.E.2d 133, 138 (Ind. 2012) (footnote omitted). The evidence indicates that after Mayfield pushed Jenkins down onto the futon, he started hitting her in the face with his fist. He then pulled out a knife and began poking her on the arms and legs with the knife. Officer Welborn observed Mayfield straddling Jenkins and that Jenkins was screaming and crying as Mayfield punched her pregnant belly. Detective Humkey observed that Jenkins had suffered a scratch on her chin and a cut on her leg. In addition, Williams noticed that Jenkins's face was red and swollen and had red marks on it that looked like scratches. This evidence was more than sufficient to establish that Mayfield caused Jenkins impairment of physical condition, including physical pain.

Mayfield directs us to the fact that Jenkins testified for the defense and stated that his attack did not cause her pain or bruising. Tr. at 73. However, the trial court did not find Jenkins's testimony credible. *Id*. at 80-81. We remind Mayfield that, when reviewing the

6

sufficiency of the evidence, we will not disturb the trier of fact's assessment of witness credibility. The State presented sufficient evidence to support Mayfield's conviction for class C felony battery.

Affirmed.

BAKER, J., and NAJAM, J., concur.