Cedric NICKS, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–9012–CR–00807.

Supreme Court of Indiana.

Sept. 9, 1992.

Eugene C. Hollander, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of sixty (60) years.

The facts are: Linda Duarte, the victim in this case, lived in apartment 205 of a subsidized building operated by the South Bend Housing Authority, catering to senior citizens and others with physical and mental disabilities. For a time, appellant lived in apartment 220, and at the time of the facts giving rise to this case, his grandmother lived in apartment 208. On the morning of February 8, 1990, Ms. Duarte was found on the floor of the basement laundry room dead from multiple stab wounds including a gaping cut in her throat.

The ensuing police investigation revealed that appellant and the victim, who suffered from a slight mental disability, had shared a dating relationship from late 1989 through early 1990, with appellant staying alternately with Linda and with his grandmother. One week before her death, Linda told her mother that appellant had forced her to go to the Wooden Indian Motel, where he had cut his initials on her upper chest with a knife and then raped her. She reported this incident to police and went to a hospital for treatment, where she told the attending nurse, Debbie Dudas, the circumstances surrounding her injuries, including appellant's jealousy and fear that she had been seeing another man. When Nurse Dudas informed Linda she was pregnant, the latter expressed her fear that appellant would kill her with a knife.

Cab driver Barbara Suiter reported that she had driven Linda and appellant to the Wooden Indian Motel several times, as she did on the early morning of February 4, 1990. On that occasion, when Linda was not in the cab, appellant told Ms. Suiter that Linda was pregnant, that he wanted no children, and that he was "going to get rid of the baby." At approximately 10:00 a.m. on February 8, 1990, appellant visited Indiana Arms and Ammo, looked at hunting knives, and purchased one, taking care to see it was double bagged so as not to be visible.

Cab driver James Gaska testified he drove appellant from Indiana Arms and Ammo to Linda's apartment building about 10:45 that morning. Appellant next was seen by two witnesses with Linda in the lobby of the building about 11:00 a.m. wearing dark clothing and white tennis shoes. One of these witnesses recalled seeing appellant leave the building about 11:30 or 12:00. He was seen about 11:45 on the second floor of the building by another resident.

Officer Robert Badowski was dispatched to the murder scene at 12:21 p.m., where he found the laundry room covered with blood. Technicians were able to account for all of the shoe prints found in the blood spatter except for one set of Nike athletic shoe prints. Bloodstain shoe prints similar to these were discovered inside and outside the victim's apartment and continuing down the hallway, ending at the doorway to appellant's grandmother's apartment.

Appellant contends the trial court erred in allowing the State to use its peremptory challenges to strike two black members of the venire. Noting that the victim was a white woman and he is black, appellant reasons the State's use of two of its peremptory challenges to remove both black male members of the panel violated his equal protection rights as per *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 and its federal and state progeny. He maintains the State failed to rebut his *prima facie* claim with a showing of non-pretextual, race-neutral reasons for striking jurors Winston and Jefferies.

The State argues the facts of this case reveal that no *prima facie Batson* discrimination claim was ever established. Here, the relevant circumstances include the facts that the State struck two black males from the venire, leaving two black females to serve on the jury (one as an alternate). The facts that appellant is a black man and the victim was a white woman raise at least the specter of a strategic motive for the prosecution to remove black males from the panel, as appellant alleges. A survey of the cases seems to suggest that discrimi-

natory intent will be inferred solely from the prosecution's pattern of strikes only where peremptories have been used to remove all members of the cognizable group from the venire. *See, e.g., Holifield v. State* (1991), Ind., 572 N.E.2d 490 (striking of three of three black veniremen makes a *prima facie* case); *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 89 (removal of three of four black veniremen "does not, by itself, raise an inference of racial discrimination").

We find no Indiana case dealing with gender discrimination in a *Batson* claim; however, other jurisdictions have applied *Batson* not only to its initial race-based context but also to the exclusion of any other identifiable group in the community which may be subject to prejudice, *State v. Vinson* (1990), 70 Ohio App.3d 391, 591 N.E.2d 337, and to exclusion due to gender in particular, *United States v. De Gross* (9th Cir.1992), 960 F.2d 1433. Assuming for the sake of argument that the striking of the black veniremen establishes a *prima facie* case of discrimination, we turn to the State's race- (and gender-) neutral justification, observing in passing that a prosecutor's "justifications" can constitute part of a defendant's *prima facie* case. *United States v. Lewis* (9th Cir.1988), 837 F.2d 415, *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323.

■ We note that a *Batson* claim is one purely of fact, and its resolution will turn largely on an assessment of credibility of both the witnesses and the prosecutor. *Hernandez v. New York* (1991), 500 U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395.

■ In the case at bar, even assuming, *arguendo*, that appellant has demonstrated a *prima facie* showing of intentional race and gender discrimination, the prosecution's proffered reasons for its challenges clearly pass muster under *Batson* and its progeny.

The prosecutor explained that he was challenging Juror Winston because his nephew recently had been convicted of murder in that court in a highly publicized drug-slaying case and that he was challenging Juror Jefferies because he perceived

the juror had difficulty following the proceedings and had indicated moral reservations regarding passing judgment on others. As the record here bears out, while perhaps not quite amounting to challenge for cause (and under *Batson* such is not required), the reasons put forward by the State amply suffice to negate appellant's claim of discriminatory intent. We find no *Batson* violation here.

Appellant contends the evidence is insufficient to support his conviction. Appellant argues that the mere opportunity to commit a crime, standing alone, is not sufficient to support a conviction. He acknowledges the evidence established that he knew the victim, that they lived in the same apartment building, and that he was present in the building on the morning of the murder. He emphasizes, however, that there was no eyewitness nor expert testimony connecting him to this crime; that the murder weapon was never located; that the bloody shoe print was never conclusively identified; and that no items of physical evidence were recovered from the murder scene, the victim's apartment, appellant's grandmother's apartment, or appellant's mother's house to connect appellant to the murder.

He maintains the claims of the victim and of Nurse Dudas, whose testimony regarding the victim's pregnancy and injuries following the Wooden Indian Motel incident, were inherently unbelievable due to the victim's mental infirmity and the testimony of Dr. Rick Hoover that the autopsy revealed no indication that the victim in fact was pregnant. Appellant points out discrepancies involving other State's witnesses' testimony to demonstrate their testimony also was inherently unbelievable. He thus concludes his conviction rests upon "uncorroborated, unrelated, inconclusive factors" and should be reversed.

■ We will not assess credibility nor will we reweigh evidence; we look only to the evidence favoring the verdict, all of which may be circumstantial, to see whether inferences may reasonably be drawn therefrom to support the factfinder's re-

sult. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. Although Dr. Hoover saw no evidence of pregnancy, he went on to testify that the autopsy's failure to reveal the victim's pregnancy did not mean she was not pregnant, as the pathologist was not examining the victim in that regard. We are presented here with direct evidence of appellant's violent relationship with and physically abusive treatment of the victim, along with direct evidence of his rage brought on by her alleged infidelity and discovery of her pregnancy and his purchase of a hunting knife and subsequent presence near the scene the morning of the murder. In light of the foregoing, it is clear the jury was well within the bounds of reason in drawing the inference that it was indeed appellant who killed Linda Duarte.

Appellant contends the trial court erred in overruling his motion for mistrial made in response to a State's witness's impermissible comment upon his post-arrest silence. When appellant was arrested the day following the murder, he was taken to the police station for interrogation. Upon being informed of his *Miranda* rights, appellant invoked his right to remain silent. This interrogation was tape recorded, but upon appellant's pretrial motion it was suppressed by the trial court. At trial, during direct examination of Detective Sergeant Thomas Trenerry, when asked by the State what action he took upon being notified of appellant's apprehension, Sergeant Trenerry replied, "I left the Courthouse and went down to the station to conduct an interview with him and when I got to the station Sergeant Hammerlein assisted me in the interview. We waited a few minutes and got things together and then we sat down to interview Mr. Nicks." Appellant objected at trial, and argues on appeal, that the testimony that he was interviewed implied, by the absence of anything further, that he had invoked his right to remain silent, thereby using his exercise of that right against him in violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 and its progeny.

As the State points out, *Doyle* held it to be fundamentally unfair to use a defendant's post-arrest silence for impeachment purposes after he has been assured through *Miranda* warnings that he cannot be penalized for exercising his constitutional rights. A *Doyle* violation occurs when the prosecution succeeds in making affirmative use of the defendant's exercise of his rights in obtaining his conviction. *See Greer v. Miller* (1987), 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618. This Court has held, however, that no *Doyle* violation occurred where it was mentioned that the defendant had been advised of his rights, *Collins v. State* (1984), Ind., 464 N.E.2d 1286; where it was stated that the defendant understood his rights, *McKenzie v. State* (1980), 274 Ind. 276, 410 N.E.2d 1308; or even where it was mentioned the defendant had requested counsel after being advised of his rights, *Cook v. State* (1989), Ind., 544 N.E.2d 1359.

In the case at bar, where the testimony complained of indicated merely that appellant was interviewed by investigating officers, the potential for abuse of his exercise of his right to remain silent clearly was too attenuated to amount to a *Doyle* violation. We see no error in the trial court's denial of appellant's motion for mistrial.

Appellant contends he was denied effective assistance of counsel due to trial counsel's failure to object to prejudicial State's evidence on sustainable hearsay grounds. Prior to and throughout the trial, defense counsel sought to exclude, on relevancy grounds, references to the Wooden Indian Motel incident by Nurse Dudas, the victim's mother, and others. Appellant notes that the trial court frequently responded to counsel's objections by requesting clarification as to relevancy or hearsay, and that the State's hearsay objection to defense witness Chris Jordan's testimony as to his conversation with the victim was sustained. Appellant accordingly reasons his objections would have been sustained had they been based upon hearsay grounds, and thus significant evidence forming the basis

for his motive to kill the victim should have been excluded.

 Our review of effectiveness of counsel is two-pronged: we first independently examine each alleged instance to see whether it fell below prevailing professional norms; we then assess the total prejudice accruing from counsel's substandard performance, if any, to see whether it so affected the outcome as to render the result unreliable. *See Kutscheid v. State* (1992), Ind., 592 N.E.2d 1235; *Smith v. State* (1989), Ind., 547 N.E.2d 817. "To show substandard performance in failure to object, an appellant must show that an objection, if made, would have been sustained." *Kutscheid, supra* at 1239.

 Here, however, the objection, even if based on hearsay, would not have been sustained. Indiana case law holds that hearsay remarks of a murder victim are admissible to demonstrate the victim's explanation of prior injuries inflicted by the defendant. *See Drummond v. State* (1984), Ind., 467 N.E.2d 742; *Heck v. State* (1990), Ind., 552 N.E.2d 446 and *Thomas v. State* (1990), Ind., 553 N.E.2d 825.

In *Thomas* we stated:

"Under the authority of *Drummond, supra,* this evidence was admitted to show the state of mind of appellant and his attitude toward the decedent. Although the statements by some of the witnesses in fact were hearsay as to the source of the victim's prior injuries, the deceased's statements were made in conjunction with severe personal injuries and were demonstrated to have been made in explanation of appellant's actions in a short-term highly volatile situation. Under such circumstances, we cannot seal the lips of the decedent and permit appellant to proceed before the jury on the premise that he had not abused the victim prior to her death." *Id.* at 827.

The testimony of Linda Duarte's remarks concerning appellant's prior abuse accordingly would have been admissible in the instant case even in the face of hearsay objections from defense counsel; it thus was not substandard performance for coun-

sel to fail to object upon such grounds. *Kutscheid, supra.* Appellant here was not denied effective assistance of counsel.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.