Stacy M. **FRANCIS**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49S00–9909–CR–473.

Supreme Court of Indiana.

Nov. 30, 2001.

Kevin C.C. Wild, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice.

Stacy Francis appeals his convictions for murder, felony murder, and three counts of robbery. We address the following re-phrased issues: (1) did the trial court err

in denying Francis' motion for mistrial; (2) did the trial court err by allowing into evidence an out-of-court-statement attributed to Francis' associate in crime; (3) did the trial court err in imposing sentences for robbery as a Class B felony; and (4) was the evidence sufficient to sustain the murder conviction. We vacate the sentences for robbery as Class B felonies and remand for resentencing as Class C felonies. In all other respects we affirm the trial court's judgment.[1]

## FACTS

The facts most favorable to the verdict show that in the late evening hours of April 8, 1998, Stacy Francis and two associates, Amanda Jones and Thomas Dangerfield, were present in a room at a motel on the east side of Indianapolis. In an adjoining room there was another group that included Scott Foor, Dewaun Sanders, Jason Thrasher, and Willie Thomas. During the course of the night the two groups got together and were gambling and smoking marijuana. At some point an argument erupted between Francis and Foor, whereupon Francis produced a handgun declaring, "I want everything you all got." R. at 394, 426. Demanding Foor to lie on the floor and firing a weapon in his direction, Francis continued, "You all think I'm playing. I'll kill you [m*f*s]." R. at 398. Francis then directed Jones and Dangerfield to check everyone's pockets. They complied, taking money and drugs from Thomas, Thrasher, and Foor. The evidence is in conflict whether during this escapade Francis gave his handgun to Dangerfield telling him to "cap ['shoot'] all these [m*f*s]," R. at 531, or whether while Francis was pointing the gun, Dangerfield told him to "shoot 'em all," R. at 686. In any case, Jones, Dangerfield, and Francis eventually left the motel. As Francis left, he fired several shots into the room, two of which struck Sanders: one in the chest and the other in the abdomen. Sanders died as a result.

Subsequently, Francis was arrested and charged with murder, felony murder, four counts of robbery as Class A felonies, and one count of carrying a handgun without a license. At the close of the State's case-in-chief, Francis moved for judgment on the evidence concerning one of the robbery counts, which the trial court granted. As to the remaining charges, the jury returned verdicts of guilty. Prior to sentencing, the trial court merged the felony murder into the murder conviction, reduced the convictions for Class A felony robbery to Class B felonies, and sentenced Francis to a total executed term of sixty-one years.[2] This direct appeal followed. Additional facts are set forth below where necessary.

## DISCUSSION

### I.

Francis contends the trial court erred in denying his motion for mistrial based on an allegation that the State improperly elicited evidence concerning Francis' post-arrest silence.[3] The essential facts are

---

1. We decline to address Francis' claim concerning his conviction for felony murder. Prior to sentencing, the trial court merged the felony murder into the murder conviction and did not impose a sentence thereon. R. at 1216.

2. Specifically, Francis received sixty years for murder, twenty years apiece for each of the three robbery convictions, and one year for the handgun conviction. The trial court ordered the murder and robbery convictions to be served concurrently and the handgun conviction to be served consecutively to one of the robbery convictions.

3. Francis also claims the trial court erred in denying a second motion for mistrial that was premised on the violation of a defense motion

that after the shooting, Francis fled to Evansville where he was eventually arrested and held in custody. In its case in chief, the State called to the stand investigating officer Michael Hornbrook from the Marion County Sheriff's Department. The following exchange occurred:

Q. Did it come a point in time after the night of these events that you went to Evansville, Indiana?

A. Yes, there was.

Q. Are you able to give us the date that you went there?

A. If I could have a moment I could research that. I went to Evansville, Indiana on April 14th, 1998.

Q. And what was your purpose for going there?

A. They had apprehended the Defendant in Evansville, Indiana and I went down to try to interview Mr. Francis.

R. at 926. At that point defense counsel asked to approach the bench and during a side bar conference moved for mistrial. The trial court denied the motion but struck the officer's response from the record. R. at 929. At the close of the officer's testimony, one of the jurors submitted the following question to the court:

Why are we not allowed to hear the statement that they took from Francis. [I]s this not important evidence to the case and for us to hear.

R. at 1075, 1078. The record is not clear what response, if any, was given to the juror. In any case, defense renewed its motion for mistrial, which the trial court again denied. During final instructions the trial court advised the jury among other things that it should not consider any answers and statements that had been stricken from the record. R. at 263. Francis contends that striking the officer's remark and admonishing the jury were not enough; rather, the trial court should have declared a mistrial. He argues that the officer's remark "amounted to a comment on the defendant's right to remain silent and not to testify as guaranteed by the Fifth Amendment." Br. of Appellant at 9.

Although citing absolutely no authority to support his argument, Francis makes a claim for what is commonly referred to as a *Doyle* violation. In *Doyle v. Ohio,* the United States Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[4] The Court explained, "[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Id.* at 618, 96 S.Ct. 2240. Not limiting *Doyle* solely to "the use for impeachment purposes," this Court has held that "[d]uring trial, the State may not comment upon a defendant's post-arrest, post-*Miranda* warning silence because that silence may be nothing more than an exercise of the Fifth Amendment right." *Wisehart v. State,* 693 N.E.2d 23, 64 (Ind.1998). Indeed, the Supreme Court has noted that where, as here, a defendant's silence is used not as impeachment but as affirmative proof in the State's case in chief, "The constitutional violation might thus be especially egregious because, unlike *Doyle,* there was no risk that exclusion

in limine. We resolve a related issue in part II. Therefore, we decline to address it here.

4. In this case, the record shows that Officer Hornbrook advised Francis of his *Miranda*

rights, and Francis declined to give a statement indicating that he would obtain private counsel. R. at 1085–86.

of the evidence would merely provide a shield for perjury." *Wainwright v. Greenfield*, 474 U.S. 284, 292 n. 8, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (quotation omitted).

■ In *Nicks v. State*, an investigating officer testified as follows: "I left the Courthouse and went down to the station to conduct an interview with [the defendant] and when I got to the station Sergeant Hammerlein assisted me in the interview. We waited a few minutes and got things together and then we sat down to interview Mr. Nicks." 598 N.E.2d 520, 524 (Ind.1992). Defense counsel immediately objected arguing that the testimony implied that the defendant had invoked his right to remain silent. Thus, the argument continued, the State was using the exercise of that right against him in violation of *Doyle*. *Id.* This Court disagreed, declaring "the potential for abuse of [defendant's] exercise of his right to remain silent clearly was too attenuated to amount to a *Doyle* violation." *Id.* We reach the same conclusion here. Francis' silence was used neither as impeachment nor as affirmative proof of his guilt. There was certainly the potential that the officer's testimony would stray into a constitutionally protected area. However, because of a timely request to approach the bench, Francis' silence was never implicated. And as a result no *Doyle* violation occurred.

■ At most, the officer's testimony was simply not relevant. However, it was stricken from the record, and the jury was admonished not to consider it. We presume the jury followed the trial court's admonishment and that the excluded testimony played no part in the jury's deliberation. *Duncanson v. State*, 509 N.E.2d 182, 186 (Ind.1987). The grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *War-*

*ren v. State*, 725 N.E.2d 828, 833 (Ind. 2000). The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Ortiz v. State*, 741 N.E.2d 1203, 1205 (Ind.2001). The trial court's determination will be reversed only when an abuse of discretion can be established. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind.2001). To prevail, the appellant must show that he was placed in a position of grave peril to which he should not have been subjected. *Id.* In this case, Francis has made no such showing. The trial court correctly denied the mistrial motion.

## II.

Francis phrases the next issue as trial court error in "lifting a defense motion in limine. . . ." Br. of Appellant at 12. The facts are these. Immediately prior to trial Francis filed a motion in limine to prohibit the introduction of certain evidence. Specifically, Francis sought to exclude on hearsay grounds testimony concerning anything his associate Dangerfield may have said during the course of the events on April 8. After a hearing, the trial court granted the motion. The trial proceeded, and the State called Foor as its first witness. The following exchange occurred:

Q. Okay, what happened next?

A. [Francis] pulled out a gun and said, "I want everything you all got."

Q. Okay, and did you see the gun?

A. Yes, I seen the gun.

Q. You saw it in his hand?

A. Yes.

Q. Okay, and what happened at that point?

A. He was pointing the gun at everybody in the room, telling them, he wanted [their] money and had the girl, Amanda, check their pockets for money and his buddies in the background, Dangerfield, telling

him to "kill everybody in the room...."

R. at 394. Defense counsel immediately objected and moved for mistrial on grounds the testimony violated the order in limine. The trial court denied the mistrial motion but struck the response and admonished the jury.

The trial proceeded, and the State eventually requested the trial court to reconsider its order and lift the motion in limine. Granting the request, the trial court noted the State had introduced evidence showing that Francis and Dangerfield were apparently working together during the robberies and shooting. The State then called Amanda Jones to the stand who testified over objection that while present in the motel room she heard Dangerfield say "something along the lines of 'shoot 'em all.'" R. at 686. Francis claims error.

 Granting a motion in limine does not determine the ultimate admissibility of the evidence. *Godby v. State*, 736 N.E.2d 252, 255 (Ind.2000), *reh'g denied.* Rather, the purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. *Wright v. State*, 593 N.E.2d 1192, 1194 (Ind.1992). If the trial court errs by admitting evidence, the exclusion of which was sought by the motion in limine, then the error is in admitting the evidence at trial in violation of an evidentiary rule, not in rescinding a previous order in limine. *Short v. State*, 443 N.E.2d 298, 308 (Ind. 1982) ("[I]f a Motion in Limine is granted and then at trial the court decides to admit the evidence, the error is not in violating the Motion in Limine but in admitting the

evidence."). The record shows the trial court admitted the testimony over Francis' hearsay objection on the basis that a conspiracy had been established. R. at 673–74. *See* Ind. Evidence Rule 801(d)(2)(E); *Barber v. State*, 715 N.E.2d 848, 852 (Ind. 1999) ("A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy is not hearsay and is therefore admissible." (quotation omitted)). Despite Francis' argument to the contrary, by the time Jones testified there was sufficient evidence before the trial court to demonstrate the existence of a conspiracy between Francis and Dangerfield. *See* Ind.Code § 35–41–5–2(a), (b) (listing the elements of conspiracy as: (1) intent to commit a felony; (2) an agreement with another person to commit the felony; and (3) an overt act in furtherance of that agreement).[5] We find no error here.

### III.

Francis next complains the trial court erred by imposing sentences for robbery as Class B felonies. The facts underlying this assertion show that the State charged Francis with three counts of robbery as Class A felonies, and he was convicted as charged. Because the serious bodily injury alleged in each count—death to Dewaun Sanders—was the element the State relied upon to elevate the offenses to an A felony, the trial court imposed sentences for Class B felony robberies. *See Logan v. State*, 729 N.E.2d 125, 136 (Ind.2000) (principles of double jeopardy prohibit the same evidence—death of the victim—from supporting a murder conviction as well as elevating robbery to a Class A felony). Although at sentencing Francis argued

---

5. We observe that consistent with Federal Rule of Evidence 801(d)(2)(E), our own rule "applies not only to conspiracies but also to joint ventures, and that a charge of criminal conspiracy is not required to invoke the evidentiary rule." *United States v. Kelley*, 864 F.2d 569, 573 (7th Cir.1989).

"the robberies reduce to a B," R. at 1213, in this appeal he claims error alleging he should have been sentenced to the robberies as C felonies.

There are three felony classes of robbery:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

I.C. § 35–42–5–1. Robbery as a Class C felony is an inherently included lesser offense of robbery as a Class A felony. It is not possible to commit the greater offense without committing the lesser offense as well. *See Kingery v. State,* 659 N.E.2d 490, 495 (Ind.1995). Whether robbery as a Class B felony is either an inherently included or a factually included lesser offense of robbery as a Class A felony depends on the wording of the charging information. In this case, with respect to each of the three victims, the charging informations read in pertinent part:

Stacy M. Francis, Amanda Jones and Thomas A. Dangerfield, A/K/A Anthony T. Dangerfield, on or about the 9th day of April, 1998, did knowingly take from the person or presence of [named victim] property, that is: United States currency and cocaine, by putting [named victim] in fear or by using or threatening the use of force on [named victim], which resulted in serious bodily injury,

that is: mortal gunshot wounds to Dewaun Sanders[.]

R. at 157–58. As charged, it is apparent that the bodily injury variety of Class B felony robbery is an inherently included lesser offense of robbery as a Class A felony. However, as the trial court correctly determined, because death of the victim supported the murder conviction as well as elevating robbery to a Class A felony, principles of double jeopardy prohibited sentencing Francis to A felony robberies. The same double jeopardy concerns are posed by sentencing Francis to the bodily injury variety of Class B felony robbery.

The question here is whether the charging informations sufficiently allege the "armed with a deadly weapon" variety of Class B felony robbery such that it is a factually included lesser offense of robbery as a Class A felony. The State answers affirmatively citing in support *Smith v. State,* 445 N.E.2d 998 (Ind.1983). In that case, the defendant was charged with attempted robbery as a Class A felony. However, the trial court gave the jury an instruction on attempted robbery as a Class B felony, and the defendant was convicted accordingly. On appeal, he complained the trial court erred in giving the instruction because: (i) under the robbery statute the Class B felony was not inherently included within a charge of Class A felony; and (ii) the information did not allege an attempted robbery as a Class B felony. The information charged in pertinent part:

Larry David Smith did knowingly attempt to take property, to wit U.S. currency, by using and threatening the use of force, to wit a firearm or bomb, thereby putting Roger Smith in fear and causing bodily injury to Roger Smith.

*Id.* at 999. Because the information did not allege that he committed the act "while

armed with a deadly weapon," defendant Smith complained that the information did not allege robbery as a Class B felony. *Id.* Unpersuaded, this Court held:

> Though it is undoubtedly preferable for an information for Attempted Robbery, Class B felony, to contain the phrase "while armed with a deadly weapon", [ ] absent proof that the accused was misled by the phraseology employed, we do not think that such a phrase is imperative to satisfy the due process requirement of notice.

*Id.*

The State urges that *Smith* is dispositive arguing "[t]he information in the present case specified the injuries to be mortal gunshot wounds, and gunshot wounds can only be inflicted by firearms." Br. of Appellee at 9. We disagree that *Smith* provides the answer in this case. A fair reading of the information in that case shows that implicitly the defendant was "armed." The only question was the flexibility the Court would allow in the terminology used to allege "with a deadly weapon." *Smith*, 445 N.E.2d at 999. As the Court pointed out, a firearm is a deadly weapon. *See* I.C. § 35–41–1–8(a). Thus, the defendant could not have been misled by an information using words sufficiently similar in meaning to those used in the robbery statute. *Smith*, 445 N.E.2d at 999.

■ The case before us is different. It may be true that only a deadly weapon can inflict a gunshot wound. Here, however, it cannot be said that the phrase "mortal gunshot wound" was contemplated to put Francis on notice that he was being charged with the "armed with a deadly weapon" variety of robbery. Rather, the phrase describes the bodily injury—death—to the victim. In essence, it serves to emphasize that the information is alleging a Class A felony robbery. We conclude therefore that the informations in

this case did not sufficiently allege the armed with a deadly weapon variety of Class B felony robbery, and thus it was not a factually included lesser offense of robbery as a Class A felony. Accordingly, we vacate Francis' sentences for the three robberies as Class B felonies and remand this cause to the trial court for a new sentencing order that imposes sentences for Class C felony robberies.

### IV.

■ Alleging he did not know that he had shot anyone and certainly did not know that anyone had been mortally wounded, Francis insists that the evidence was not sufficient to convict him of "knowingly" killing another person. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess witness credibility. *Soward v. State*, 716 N.E.2d 423, 425 (Ind.1999). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Kelly v. State*, 719 N.E.2d 391, 394 (Ind.1999), *reh'g denied.* We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35–41–2–2(b). A knowing killing may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious bodily harm. *Hawkins v. State*, 748 N.E.2d 362, 363 (Ind.2001), *reh'g denied.* Evidence is sufficient to uphold a murder conviction when the evidence indicates that a weapon was fired in the direction of the victim. *Id.* Francis' claim in this case amounts to an invitation for this Court to reweigh the evidence. We decline. The evidence set forth in the facts section of this opinion is sufficient to sustain Francis' murder conviction.

## CONCLUSION

We vacate Francis' sentences for the three robbery convictions as Class B felonies and remand this cause to the trial court for a new sentencing order that imposes sentences for robbery as Class C felonies. In all other respects the judgment of the trial court is affirmed.[6]

SHEPARD, C.J., and SULLIVAN, J., concur.

DICKSON, J., concurs in Parts I, II, and IV and dissents as to Part III without separate opinion.

BOEHM, J., concurs in Parts I, II, and IV and dissents as to Part III on the ground that the information charged infliction of a gunshot wound, which is sufficient to put the defendant on notice that he is charged with robbery armed with a deadly weapon.

---

**6.** We note that a new sentencing hearing is unnecessary. *See O'Connell v. State,* 742 N.E.2d 943, 952–53 (Ind.2001) (setting forth the options a trial court may employ when a cause is remanded for a new sentencing order). That is especially so because the sentences the trial court originally imposed for the robbery convictions were ordered to be served concurrently to the sentence imposed for the murder conviction.