**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Mar 21 2014, 7:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**YVETTE M. LAPLANTE**
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUSTIN D. COATES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1305-CR-246 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1105-FB-523

**March 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Justin Deon Coates was convicted of three counts of class B felony Criminal Confinement[1] and one count of class D felony Obstruction of Justice.[2] Coates now appeals and presents the following restated issues for our review:

1. Did the trial court abuse its discretion in admitting evidence of Coates's prior conviction?

2. Did the State present sufficient evidence to support Coates's criminal confinement convictions?

We affirm.

On the morning of May 15, 2011, Coates visited Jennifer Pitt at her apartment. Pitt and Coates went for a drive, and while in the car, Pitt saw Coates with a handgun on his lap. After the drive, Pitt and Coates returned to Pitt's apartment. Shortly thereafter, Coates showed up at the apartment of his acquaintance, Rex Abell, which was a few doors down from Pitt's apartment. Coates had bloody knuckles and asked if he could come inside to wash his hands. Abell let Coates in and Coates explained that he had argued with a woman a few doors down and punched the wall.

A short time later, Abell exited the apartment but Coates remained inside, as did four of Abell's stepchildren, who were sleeping at the time. As Abell stood outside, police approached him, showed him a picture of Coates, and asked if he had seen the man. Because Abell did not believe the picture looked like Coates, he responded that he had not. Police also asked Abell if he knew a person named Justin. Because Abell knew Coates as "Juice",

[1] Ind. Code Ann. § 35-42-3-3 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).
[2] Ind. Code Ann. § 35-44-3-4 (West, Westlaw current through 2011 1st Reg. Sess.), *repealed by* P.L. 126-2012, § 53, *recodified at* Ind. Code Ann. § 35-44.1-2-2 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).

he responded that he did not. When Abell attempted to return to his apartment, he discovered that the door was locked.[3] Abell alerted the police, who directed him to wait at a neighbor's apartment.

Aware that there were children in the house with Coates, police surrounded the apartment. A short time later, six-year-old J.M. opened the front door and walked out of the apartment, leaving the front door open behind her. Because three more children, including one-year-old twins and two-year-old B.M., remained inside, crisis negotiator Mike Sitzman positioned himself outside the open apartment door and tried to make contact with Coates, first by shouting and later by using a megaphone. For the next three hours, Officer Sitzman attempted to get Coates to come out of the apartment or let the children out. Coates never responded, but officers could hear a small child moving around and crying. About halfway through the standoff, Sitzman began to speak directly to B.M. Eventually, B.M. walked out of a bedroom and into the front living area where police could see her. SWAT Officer Jacob Taylor then entered the apartment, grabbed B.M., and brought her outside.

After handing B.M. off to other officers outside, Officer Taylor reentered the apartment and used a pole camera, a long pole with a camera attached to one end and an LCD screen mounted on the other, to scan the rooms of the apartment looking for Coates. Officer

---

[3] We note that Coates repeatedly asserts that Abell was locked out for only three or four minutes before reentering the apartment. Although we note that Abell testified at one point that it took him "maybe um three (3) minutes, three (3) or four (4) minutes" to get back into his apartment after discovering the door was locked, it is clear from the rest of his testimony that he was unable to reenter the apartment until after the conclusion of the ensuing standoff. *Transcript* at 28. Indeed, immediately after stating that he reentered the apartment three or four minutes after being locked out, Abell clarified that he did not actually go back into the apartment at that time because the police instructed him not to. It therefore appears that Abell misspoke, and that he perhaps meant to say it took him three or four *hours* to regain entry to the apartment.

Taylor eventually located Coates standing in the middle of the bedroom B.M. had just exited with his hands up. Officer Taylor ordered Coates to come out of the bedroom, and Coates complied and was taken into custody. The one-year-old twins were found asleep in a back bedroom. The officers obtained consent to search the apartment and discovered a handgun in a child's bedroom, in the top of a small plastic chest of drawers containing toddler-sized girl's clothing. The gun was loaded and there was a bullet in the chamber.

A few hours after Coates's arrest, Detective Stacy Spalding interviewed Coates at the police station. When Detective Spalding briefly stepped out of the interview room, Coates looked through the notebook she had left on the table. After reading for some time, Coates ripped a page out of the notebook, crumpled it, and ate it. Detective Spalding subsequently discovered that the page Coates ate contained the serial number and description of the gun police recovered from Abell's apartment.

As a result of these events, the State charged Coates with three counts of criminal confinement, elevated to class B felonies based on an allegation that Coates committed the offenses while armed with a deadly weapon. The State also charged Coates with class B felony possession of a firearm by a serious violent felon (SVF) and class D felony obstruction of justice for eating the page out of Detective Spalding's notebook. Coates successfully moved to bifurcate the SVF charge and was convicted of that offense on May 15, 2012.[4] After several continuances, Coates's jury trial on the remaining counts

---

[4] This Court subsequently reversed Coates's SVF conviction. *Coates v. State*, No. 82A02-1207-CR-359 (April 4, 2013) (concluding that the State presented insufficient evidence of Coates's prior felony conviction).

4

commenced on March 18, 2013, and Coates was found guilty as charged. Coates was sentenced on April 26, 2013, and he filed a motion to correct error the same day. After holding a hearing, the trial court denied the motion on May 16, 2013. Coates now appeals.

1.

Coates first argues that the trial court abused its discretion by admitting evidence of his May 15, 2012 SVF conviction arising out of the events of this case. The decision to admit or exclude evidence lies within the trial court's sound discretion. *Filice v. State*, 886 N.E.2d 24 (Ind. Ct. App. 2008), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Dixon v. State*, 967 N.E.2d 1090 (Ind. Ct. App. 2012). We will not reverse absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Johnson v. State*, 831 N.E.2d 163 (Ind. Ct. App. 2005), *trans. denied*. Moreover, even if the trial court abuses its discretion in admitting evidence, we will leave the judgment undisturbed if the error was harmless. *Granger v. State*, 946 N.E.2d 1209 (Ind. Ct. App. 2011).

Prior to trial in this matter, the trial court granted Coates's motion in limine to exclude evidence of his separate SVF conviction, which arose out of the same events of the case before us. On cross-examination, defense counsel questioned Abell about his initial reluctance to consent to a search of the apartment and elicited testimony that Abell had a prior felony conviction that would have made it a crime for him to possess a handgun. Thus, the defense insinuated that the gun belonged to Abell, but that he was denying ownership of the gun in order to avoid prosecution.

Additionally, the State questioned Crime Scene Unit Detective Tony Walker about evidence collected from the apartment, including the gun. In the course of this questioning, the State asked Detective Walker if he had attempted to collect DNA evidence from the gun. Detective Walker responded that he had swabbed the gun for DNA, but that the swabs were never tested for DNA. On cross-examination, the defense probed further into why the tests were never performed. Detective Walker explained that in order to send the swabs for testing, he needed to obtain DNA from Coates for comparison. Detective Walker explained that he never received a request or warrant to obtain Coates's DNA, and that the order to obtain Coates's DNA would have come from the detective in charge of the case. Defense counsel asked a number of questions about the process of obtaining a DNA sample and sending it for testing and repeatedly suggested that the lack of testing created "an enormous question mark." *Transcript* at 120, 121.

Before calling its next witness, the State argued during a bench conference outside the presence of the jury that the defense had opened the door to the admission of evidence concerning Coates's SVF conviction. Specifically, the State argued that Coates had opened the door by (1) implying that the gun belonged to Abell and that Abell was lying in order to avoid prosecution, and (2) suggesting that the State had no valid reason not to test the DNA swabs of the gun. The State argued that the swabs were not tested for DNA because Coates had already been convicted of possessing the gun on the day of the offenses, so the police did not think it necessary to obtain DNA evidence in order to prove Coates's guilt. The trial court reasoned that the defense had made a "rather dramatic issue" of the lack of DNA

6

testing and concluded, over defense counsel's objection, that the testimony would be admitted for the sole purpose of explaining why DNA testing was not conducted. *Id.* at 130. Thereafter, the jury was brought back in and the State called Detective Spalding as a witness. Over defense counsel's objection, Detective Spalding explained that she made the decision not to send the swabs for DNA analysis because Coates had been convicted of possessing the gun at the apartment on the day of these offenses. The trial court explained to the jury that the evidence was admitted for the sole purpose of explaining why the State chose not to conduct DNA testing on the swabs and instructed the jury not to rely on the testimony to show that Coates was armed at the time of the alleged offenses.

Evidence of Coates's SVF conviction was initially excluded by a ruling in limine. A trial court order granting a motion in limine does not determine the ultimate admissibility of evidence. *Francis v. State*, 758 N.E.2d 528 (Ind. 2001). The purpose of a ruling in limine is to prevent the presentation of potentially prejudicial and inadmissible evidence until after the trial court rules on its admissibility within the context of the trial. *Id.* If the trial court commits error by admitting evidence that was initially excluded by a ruling in limine, the error is the result of admitting the evidence in violation of an evidentiary rule, not in rescinding the previous order in limine. *Id.*

Although neither the motion in limine nor the trial court's order thereon specified a basis for the exclusion of testimony concerning Coates's SVF conviction, Coates claims on appeal that the testimony was inadmissible under Ind. Evidence Rule 404(b). The State responds that Rule 404(b) does not render this testimony inadmissible, and even if it did,

Coates opened the door to its admission. *See Jackson v. State*, 728 N.E.2d 147 (Ind. 2000) (noting that otherwise inadmissible evidence may become admissible where the defendant opens the door to its admission). Coates argues that his questioning of Abell and Detective Walker did not open the door to the admission of testimony concerning his SVF conviction.

We need not address Coates's arguments concerning the admissibility of the testimony and opening the door because, assuming *arguendo* that the testimony was improper, any error in its admission was harmless. An error in the admission of evidence is harmless "when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Granger v. State*, 946 N.E.2d at 1213 (quoting *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009)). In other words, we will reverse "only if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." *Id*. (quoting *Wales v. State*, 768 N.E.2d 513, 521 (Ind. Ct. App. 2002), *trans. denied*).

In this case, the trial court explicitly instructed the jury that it was not to consider Coates's SVF conviction as evidence of his guilt in this case. Instead, the jury was instructed to consider the testimony solely to explain why the police chose not to conduct DNA analysis of the swabs from the gun. *Ware v. State*, 816 N.E.2d 1167, 1176 (Ind. Ct. App. 2004) ("[w]hen a limiting instruction is given that certain evidence may be considered for only a particular purpose, the law will presume that the jury will follow the trial court's admonitions"). Moreover, the State presented substantial independent evidence that Coates

8

committed the offenses while armed. Shortly before Coates entered the apartment, Pitt observed him with a handgun in his possession. Abell testified that the gun recovered from the apartment did not belong to him or his wife. The gun, which was loaded and had a bullet in the chamber, was found in one of the children's bedrooms, in an open plastic chest mixed in with a toddler's clothing. If the gun belonged to Abell, as Coates suggested, this would be an unlikely place for a man living with several small children to store a firearm. Finally, when Detective Spalding briefly stepped out of the room during her interview of Coates, Coates looked through her notebook and, upon discovering the page containing a description of the gun, ripped the page out and ate it. This peculiar behavior supports an inference that Coates was attempting to conceal his connection to the handgun. In light of the trial court's admonishment and the substantial, independent evidence of Coates's guilt, we conclude that Coates has failed to demonstrate a substantial likelihood that the testimony concerning his SVF conviction contributed to the verdict in this case.

2.

Next, Coates challenges the sufficiency of the evidence supporting his criminal confinement convictions. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt,

9

then the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131 (Ind. Ct. App. 2008).

It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). Accordingly, the question on appeal is whether the inferences supporting the verdict were reasonable, not whether other, "more reasonable" inferences could have been drawn. *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we may not reverse a conviction merely because a different inference might plausibly be drawn from the evidence. *Thompson v. State*, 804 N.E.2d 1146.

In order to convict Coates of all three counts of class B felony criminal confinement as charged, the State was required to prove that Coates (1) knowingly or intentionally (2) confined B.M. and the twins[5] (3) without their consent (4) while armed with a deadly weapon. *See* I.C. § 35-42-3-3. Coates challenges the evidence supporting his convictions on two grounds. First, he argues that there was insufficient evidence to establish that the alleged confinement took place without consent. Second, he argues that the evidence was insufficient to establish that the children were in fact confined. We address these arguments in turn.

This court has held that "a child is incapable of consenting to criminal confinement when taken from his or her legal guardian, and therefore is deemed to have been taken

---

[5] Coates was not charged with confining six-year-old J.M.

without the child's consent as a matter of law." *Perrey v. State*, 824 N.E.2d 372, 375 (Ind.

Ct. App. 2005) (citing *Matter of Bridges*, 474 N.E.2d 529 (Ind. Ct. App. 1985)), *trans.*

*denied*. Coates makes no argument that the children consented to their own confinement or

were even capable of doing so. Instead, he argues that the evidence was insufficient to prove

that Abell, as the children's caregiver, did not consent.

> On direct examination, Abell gave the following testimony:
>
> Q: You didn't give the defendant any kind of permission to stay in there with
> the kids without you did you?
> A: To stay in there with my kids?
> Q: Without you?
> A: No.
> Q: You didn't ask him to watch them or anything like that?
> A: No.

*Transcript* at 34. Coates, however, directs us to the following portion of Abell's testimony

on cross-examination:

> Q: Did you ever tell—tell Justin to um—when you came out and saw the
> police did you ever tell Justin to stay in the house and lock the door?
> A: Um I don't—I mean I don't—I don't know—I don't.
> Q: Is it possible that you did?
> A: Maybe I mean I don't know—I mean it's been so long I don't.
> Q: So you don't know so it's possible you told him to stay in the house and
> lock the door?
> A: Maybe, maybe not, I mean it's been so long.

*Id.* at 36.

Notably, Abell never testified that he told Coates to go into the apartment and lock the

door. On direct examination, he testified unequivocally that he had not given Coates

permission to stay with the children in his absence. On cross-examination, Abell

acknowledged that it was possible that he might have told Coates to go inside and lock the

11

door, but this does not necessarily equate to permission for Coates to stay inside the apartment with the children while excluding Abell. In any event, Coates's argument is simply a request to reweigh the evidence and consider evidence unfavorable to the verdict. As our Supreme Court has noted, "[i]t is for the trier of the action to reconcile, reject or accept part of disputed or conflicting testimony, even when made by the same witness and that witness is a party to the action." *White v. State*, 275 Ind. 480, 482, 417 N.E.2d 912, 913 (1981) (quoting *Leader v. Bowley*, 132 Ind. App. 528, 543, 178 N.E.2d 445 (1961)). Thus, it was for the jury to decide which portions of Abell's testimony were credible. The jury apparently believed Abell's testimony that he did not give Coates permission to stay in the apartment with the children, and it was not convinced otherwise by Abell's admission, after repeated questioning on cross-examination, that it was perhaps possible he had told Coates to go inside and lock the door.

Next, Coates argues that the State presented insufficient evidence to establish that the children were confined. "Confinement exists when there is a substantial interference with liberty without consent." *Harvey v. State*, 719 N.E.2d 406, 411 (Ind. Ct. App. 1999). In support of his argument, Coates notes that when six-year-old J.M. walked out of the apartment, she left the door open behind her, and that B.M. was capable of walking out of the apartment on her own.[6] Coates concedes that the one-year-old twins were not capable of

---

[6] Coates incorrectly asserts that B.M. eventually exited the apartment on her own. The evidence presented at trial establishes that B.M. walked out of a bedroom and into the front living area of the apartment, at which time Officer Taylor entered the apartment and grabbed her.

leaving the apartment on their own, but claims that they were asleep and "unaware of their confinement." *Appellant's Brief* at 19.

With respect to the latter contention, we note that there is no statutory requirement that a victim be subjectively aware of his or her confinement; indeed, if such a requirement were imposed, it would be impossible to confine very young children who are not yet aware of their surroundings. Considering Coates's argument that B.M. was capable of leaving the apartment on her own, we note that before six-year-old J.M. opened the door and walked out of the apartment, the door was closed and locked. Moreover, we agree with the State's assertion that "an infant's liberty is exercised through [his or her] guardian who directs [his or her] movements and activities. Substantial interference with the infant's liberty occurs when one interferes with the guardian's ability to access and direct the child." *Appellee's Brief* at 23. Here, Coates substantially interfered with the children's liberty by impeding Abell's access to them. The evidence was therefore sufficient to support the jury's conclusion that Coates confined the children.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.