## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2019, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Franco Navarrete,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 31, 2019

Court of Appeals Case No.
19A-CR-1472

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1710-MR-4

**Brown, Judge.**

[1] Franco Navarrete appeals his convictions for two counts of murder and unlawful possession of a firearm by an alien. He claims prosecutorial misconduct and that his motion for mistrial should have been granted. We affirm.

*Facts and Procedural History*

[2] In August 2017, Navarrete and his spouse, Basalisa, were having marital problems. Gustavo Sanchez Campuzano is Basalisa's brother, and Catalina Campuzano Lujano is Basalisa's mother. On August 10, 2017, Navarrete drove up to Gustavo and Catalina as they were walking to a park, exited his vehicle, and argued with them. Navarrete shot Gustavo and Catalina several times each at close range, killing them. Navarrete drove to a rest stop on I-65, called 911, and stated that he needed to go to jail. Anthony Lantz, an investigator with the prosecutor's office, went with law enforcement to the rest stop, located Navarrete, confirmed that Navarrete was the person who called 911, and placed him in handcuffs.

[3] On October 6, 2017, the State charged Navarrete with Count I, murder of Catalina; Count II, murder of Gustavo; Count III, unlawful possession of a firearm by an alien as a level 6 felony; Count IV, identity deception as a level 6 felony; and Count V, synthetic identity deception as a level 6 felony. The State filed a use of firearm enhancement. Navarrete filed a motion in limine which requested in part, in paragraph 9, that the State "be prohibited from the following arguments . . . c. Any statements which may be interpreted by the jury as a comment on the accused's exercise of his right to a jury trial, right to

silence, right to counsel and right not to testify," and the court granted the motion as to that paragraph. Appellant's Appendix Volume II at 129-130.

[4] During Navarrete's jury trial, Lantz testified that he approached Navarrete at the rest stop and asked him if he was the person who had called the police and that Navarrete responded affirmatively, and Lantz made an in-court identification of Navarrete. The following exchange occurred between the prosecutor and Lantz:

> Q Alright, tell me what else did you – what happened after that point?
>
> A Once I identified him as Frank and the person that had called 911, I motioned for the deputy to come out of my truck and I asked Frank to lay on the ground so we could handcuff him. The deputy handcuffed him and we set him back up and I asked him if he had, again, if he'd called the police and he said that he had. He didn't want to talk about it and that he wanted a lawyer.

Transcript Volume III at 28. Navarrete's counsel asked for a sidebar and objected "with respect to the very last part of this witenesses [sic] testimony" and argued "[w]e believe that to be in violation of the motion in limine that was granted by the Court in response to State's question, not saying it's intentional, but it certainly is in violation of it, specifically 9C, any statements which may be interpreted by the jury as a comment on the accused['s] exercise of his . . . right to silence, right to counsel, and right not to testify." *Id.* at 29-30. The prosecutor stated, "I would note that it was not intentional, but I don't disagree that it should not have been stated," that the court should strike the statement

from the record, and that Navarrete was not prejudiced. *Id*. at 30. Navarrete's counsel asked for a mistrial. The trial court instructed the jury: "The Court orders that the last statement and answer made by this witness is – shell [sic] be stricken from the record and you, as a jury, are instructed to disregard it and you must not consider it in making your decision in this cause." *Id*. at 31.

[5] Later, following additional arguments, the trial court noted that a mistrial is an extreme remedy, that there would be an instruction about matters the court had struck, and that the manner in which it addressed the issue was appropriate. The court found that "it was highly unlikely that the reference to wanting to speak with an attorney will have any significant impact on the jury." *Id*. at 46. It also stated "[t]he State is directed to refrain from any reference in any manner to any statements made by the defendant at the time of questioning" and "may make no inference or reference to the defendant's statement about wanting to speak to an attorney." *Id*. The court denied the motion.

[6] During the State's rebuttal in closing argument, the prosecutor stated in part:

> Since the State bears the burden in this case, the State gets the last word. . . . I will try to keep this quickly and briefly as possible. One (1) of the first slides I put up on the board was, if there is only one (1) reasonable interpretation then you must accept that interpretation. And after everything I just heard, I didn't hear one (1) reasonable, alternative theory about how Catalina and Gustavo were shot dead. Didn't hear one (1). Didn't hear a theory. Just heard that we don't have enough evidence. We have a mountain of evidence. Also during voir dire, during opening and also during closing, Defense has asked you not to speculate. Yet their argument is full of speculation.

Transcript Volume IV at 69. Navarrete's counsel objected and stated, "at least initially there was, I believe, a burden shift stating that we did not provide a theory," and the court stated "I would disagree to the extent that this an [sic] attempt at a burden shift. . . . I don't see it as that. But I am going to admonish counsel not to make any burden shifting in this cause." *Id*. at 70. In its jury instructions, the court instructed: "The Court struck evidence from the record after you had already seen or heard it. You must not consider such evidence in making your decision" and "Your verdict should be based only on file evidence admitted and the instructions on the law." Appellant's Appendix Volume II at 169. The court also gave instructions regarding the State's burden, that Navarrete could not be convicted on suspicion or speculation, that statements made by the attorneys were not evidence, and that Navarrete had no obligation to testify. The jury found Navarrete guilty of two counts of murder as charged and unlawful possession of a firearm by an alien, and the court dismissed the other counts and found the evidence supported the use of firearm enhancement. It sentenced Navarrete to consecutive terms of fifty-five years for each murder, enhanced one of the sentences by ten years for the use of a firearm, and to one year for unlawful possession of a firearm by an alien to be served concurrently for a total sentence of 120 years.

### *Discussion*

Navarette claims that the State presented evidence of his post-arrest, pre-*Miranda* assertion of his constitutional right to remain silent and his right to counsel, that the prosecutor commented on his assertion of his right to remain

silent, that the trial court erred in failing to grant a mistrial, and that he should be awarded a new trial. He further argues the prosecutor made a direct comment on his failure to present evidence. He asserts "[t]he cumulative effect of these errors constituted prosecutorial misconduct." Appellant's Brief at 22.

[8] The State argues that it did not intend to elicit any comment from Lantz regarding Navarrete's refusal to speak with him, that it made no attempt to utilize Lantz's statement as impeachment or affirmative proof of guilt, and that the court ordered the comment stricken from the record and told the jury to disregard the comment. It argues that the jury was instructed that the attorneys' statements were not evidence, that the State bore the burden of proof, and that Navarrete had no obligation to testify.

[9] The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Barnett v. State*, 916 N.E.2d 280, 284 (Ind. Ct. App. 2009) (citing *Francis v. State*, 758 N.E.2d 528, 532 (Ind. 2001)), *trans. denied*. The grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Id.* On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Id.* (citation omitted). To succeed on appeal from the denial of a mistrial, a defendant must demonstrate that the conduct complained of was both error and had a probable persuasive effect on the jury's decision. *Id.* (citation omitted).

In reviewing a claim of prosecutorial misconduct, we determine: whether the prosecutor engaged in misconduct, and if so, whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Sobolewski v. State*, 889 N.E.2d 849, 856 (Ind. Ct. App. 2008) (citing *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)), *trans. denied*. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.* The probability that misconduct had a persuasive effect is "generally a function of three factors: the persuasiveness of the comment, the relative strength of the State's case, and the effectiveness of the trial judge's response to the comment." *Id.* at 858 (citation omitted). We also note that a trial court's jury instructions are presumed to cure any improper statements made during trial. *Guy v. State*, 755 N.E.2d 248, 258 (Ind. Ct. App. 2001), *reh'g denied*, *trans. denied*; *see also Francis v. State*, 758 N.E.2d 528, 532 (Ind. 2001) ("We presume the jury followed the trial court's admonishment and that the excluded testimony played no part in the jury's deliberation.").

In *Doyle v. Ohio*, 426 U.S. 610 (1976), the United States Supreme Court held that under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who has been arrested and Mirandized to impeach the defendant. *Sobolewski*, 889 N.E.2d at 857 (citing *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002) (citing *Doyle*, 426 U.S. at 619)). "Miranda warnings inform a person of

his right to remain silent and assure him, at least implicitly, that his silence will not be used against him." *Id.* (citing *Trice*, 766 N.E.2d at 1183 (citation omitted)). Further, the use of a defendant's post-arrest silence to impeach a defendant's exculpatory explanation is subject to harmless error analysis. *Id.* (citing *Robinette v. State*, 741 N.E.2d 1162, 1164 (Ind. 2001) (citation omitted)). A constitutional error may be harmless if it is clear beyond a reasonable doubt that the error did not contribute to the defendant's conviction. *Id.* (citation omitted). In analyzing whether such a violation is harmless, we examine: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial court of an opportunity to grant a motion for mistrial or give a curative instruction. *Id.* (citing *Robinette*, 741 N.E.2d at 1165 (citation omitted)).

[12] The record reveals that the prosecutor asked Lantz "[a]lright, tell me what else did you – what happened after that point?" Transcript Volume III at 28. There is no indication that the prosecutor's question was intended to elicit testimony from Lantz regarding any statement made by Navarrete that he did not want to talk and wanted a lawyer. The prosecution did not attempt to use the challenged statement by Lantz to prove Navarrete's guilt. The challenged statement was very brief relative to the length of the jury trial and minimally persuasive in light of the evidence indicative of guilt and the relative strength of the State's case. The trial court ordered that the challenged sentence be stricken from the record and admonished the jury to disregard the statement and that it

must not consider the statement in making its decision. It found "it was highly unlikely that the reference to wanting to speak with an attorney will have any significant impact on the jury." *Id*. at 46. The court later instructed the jury "[t]he Court struck from the record after you had already seen or heard it," "[y]ou must not consider such evidence in making your decision," and "[y]our verdict should be based only on file evidence admitted and the instructions on the law." Appellant's Appendix Volume II at 169. The court further instructed the jury that "[t]he burden is upon the State to prove beyond a reasonable doubt that the Defendant is guilty of the crime charged," the "Defendant must not be convicted on suspicion or speculation," and the State "must prove each element of the crime by evidence that firmly convinces each of you and leaves no reasonable doubt." *Id*. at 158. It instructed the jury that statements made by the attorneys were not evidence. It also instructed the jury: "No Defendant may be compelled to testify. A Defendant has no obligation to testify. The Defendant did not testify. You must not consider this in any way." *Id*. at 165.

[13] Based upon the record, in light of the factors discussed above, we conclude that Navarrete has not established that the challenged statement by Lantz and the challenged argument in closing by the prosecutor, considered separately or together, were so prejudicial and inflammatory that Navarrete was placed in a position of grave peril to which he should not have been subjected or that the jury's decision was affected. We cannot say the trial court abused its discretion in denying the motion for mistrial or that Navarrete has established prosecutorial misconduct or reversible error. *See Rowe v. State*, 717 N.E.2d

1262, 1267 (Ind. Ct. App. 1999) (finding the references to the defendant's silence during examination of a law enforcement officer were few and brief in the context of the entire trial and, in light of the factors, the prosecutor's comments on the defendant's failure to disclaim he was the driver of a truck did not render the trial unfair).

[14] For the foregoing reasons, we affirm Navarrete's convictions.

[15] Affirmed.

Baker, J., and Riley, J., concur.